UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CASE NO. 2:12-CV-00349-UA-DNF

JEAN BRIGHT,

    Plaintiff,

v.

ALLIANCEONE RECEIVABLES
MANAGEMENT, INC.,

    Defendant.
_____/

## PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS

Plaintiff, Jean Bright ("Plaintiff"), by and through her attorneys, Weisberg & Meyers, LLC, hereby submits her post-settlement Motion for Attorney's Fees and Costs in the amount of $3,989.50. In support thereof, Plaintiff states as follows:

**I.  INTRODUCTION.**

Defendant violated Plaintiff's rights under the Fair Debt Collection Practices Act ("FDCPA") by using false representations and deceptive practices in connection with collection of an alleged debt from Plaintiff, by placing telephone calls without meaningfully disclosing the caller's identity, and by failing to notify Plaintiff during each collection contact that the communication was from a debt collector. Plaintiff therefore retained Weisberg & Meyers, LLC to protect her consumer rights. Before drafting and filing her Complaint (Doc. 1), Plaintiff made multiple pre-litigation requests for relief, including a letter on or about April 23, 2012, detailing various provisions of the FDCPA which Defendant appeared to have violated via its practices, and follow-up correspondence on May 8, 2012, May 15, 2012, May 23, 2012, and May 24, 2012. (*See* Pre-litigation Correspondence, attached hereto as Exhibit "A"). Plaintiff failed in her efforts

to resolve any outstanding dispute with Defendant prior to litigation.  Plaintiff therefore filed her Complaint against Defendant on or about July 2, 2012.  (Doc. 1).

On August 15, 2012, Defendant filed its Answer and Affirmative Defenses in this matter. (Doc. 8).  The parties engaged in a good deal of negotiation and back-and-forth regarding the merits of Plaintiff's claim before Plaintiff elected to accept Defendant's offer of judgment, necessitating a significant investment of Plaintiff's attorneys' time and effort.. (*See* Exhibit "A;" Doc. 10).  After accepting Defendant's offer of judgment, Plaintiff's attorneys invested further time and effort in securing a judgment, including corresponding with the office of Defendant's counsel in an effort to determine whether Defendant opposed the relief sought by Plaintff.  (*See* Correspondence Regarding Consent Judgment, attached hereto as Exhibit "B;" Doc. 13).  Under the terms of Plaintiff's Notice of Acceptance and of the Judgment, Plaintiff is entitled to her reasonable attorneys' fees and costs, which Plaintiff requests herein pursuant to the fee-shifting provision included in the FDCPA, 15 U.S.C. § 1692k(a)(3), 28 U.S.C. § 1920, and Fed. R. Civ. P. 54(d).

## II.   PROCEDURAL HISTORY.

Plaintiff's July 2, 2012, Complaint (Doc. 1) detailed violations by Defendant of the FDCPA.  On July 24, 2012, Plaintiff prepared and filed her Notice of Pendency of Related Cases and her Certificate of Interested Persons.  (Doc. 5; Doc. 6).  On or about August 15, 2012, Defendant filed its Answer & Affirmative Defenses.  (Doc. 5).  Plaintiff reviewed the factual allegations and affirmative defenses outlined therein..  The parties engaged in further settlement negotiations, and on August 24, 2012, Plaintiff filed her Notice of Acceptance of Defendant's Offer of Judgment.  (*See* Doc. 10).  Plaintiff's counsel consulted Defendant's counsel regarding entry of a proposed consent judgment, and on December 14, 2012, Plaintiff filed her Motion for

Entry of Consent Judgment.  (*See* Exhibit "B;" Doc. 11).  As noted in Plaintiff's Motion, Plaintiff was unable, in spite of repeated attempts, to secure a response from Defendant's counsel with respect to whether Defendant opposed the relief sought therein.  (Doc. 11, p. 3).

### III. SETTLEMENT HISTORY.

As noted above, Plaintiff sent written notice of her potential claims to Defendant as early as April 23, 2012.  (*See* Exhibit "A").  Plaintiff sent follow-up correspondence on May 8, 2012, again expressing a preference for an amicable, out of court, settlement of her dispute, and noting that a settlement could be arranged for $4,800.00, conditional upon several additional terms.  (*See* Exhibit "A").  On May 15, 2012, Defendant offered Plaintiff $2,500.00 to settle this matter.  (*See* Exhibit "A").  Later that day, Plaintiff's Counsel explained that this offer was not sufficient, and noted that Plaintiff was willing to settle this matter in its entirety for $4,250.00.  (*See* Exhibit "A").

On May 23, 2012, the office of Plaintiff's Counsel again reached out to Defendant in an effort to arrange a settlement.  (*See* Exhibit "A").  In response, Defendant informed Plaintiff's Counsel that Defendant was unwilling to settle this matter for $4,250.00, further stating that, in Defendant's estimation, Plaintiff's claim was not worth that much, and exhorting Plaintiff's Counsel to discuss the matter with Plaintiff and convince her to reduce her demand.  (*See* Exhibit "A").  Plaintiff's Counsel responded, explaining that Plaintiff would not bid against herself.  (*See* Additional Settlement Correspondence, attached hereto as Exhibit "C").  On June 6, 2012, Defendant again offered Plaintiff $2,500.00 to settle this matter.  (*See* Exhibit "C").

On June 11, 2012, Plaintiff's Counsel reminded Defendant that Plaintiff had already rejected the $2,500.00 offer, and stating that Plaintiff's most recent demand, for $4,250.00, remained on the table.  (*See* Exhibit "C").  Indeed, as recently as August 21, 2012, after

preparing and filing her Complaint, Certificate of Interested Persons, Notice of Pendency, and related papers, Plaintiff's Counsel expressed Plaintiff's willingness to settle this matter for $4,250.00. (*See* Exhibit "C"). Shortly thereafter, Defendant served its offer of judgment, and Plaintiff filed her Notice of Acceptance of Defendant's offer. (Doc. 10).

IV. **THE PLAIN LANGUAGE OF THE FDCPA MANDATES THAT PLAINTIFF AND HER COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS.**

15 U.S.C. §1692k(a) provides in pertinent part:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person **is liable** to such person in an amount equal to the sum of --
>
> \* \* \*
>
> (3) in the case of any successful action to enforce the foregoing liability, **the costs of the action, together with a reasonable attorney's fee** as determined by the court.

15 U.S.C. §1692k(a) (emphasis added).

"Given the structure of [§1692k], attorney's fees should not be construed as a special or discretionary remedy; rather, the Act mandates an award of attorney's fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Graziano v. Harrison*, 950 F. 2d 107, 113 (3rd Cir. 1991) (reiterating that several courts have required an award of attorney's fees even where violations were so minimal that statutory damages were not warranted); *see also French v. Corporate Receivables, Inc.,* 489 F. 3d 402 (1st Cir. 2007) (finding that an award of attorney's fees to successful plaintiffs under the FDCPA is obligatory); *Miller v. Midpoint Resolution Group, LLC,* 608 F. Supp. 2d 389 (W.D. N.Y. 2009) (holding that once a violation of the FDCPA is found, an award of attorney's fees and costs is mandatory).

4

Discussing the mandatory nature of the fee shifting provision included in the FDCPA, the Ninth Circuit detailed that "[t]he reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho v. Bridgeport Financial, Inc.*, 523 F. 3d 973, 978 (9th Cir. 2008); *see also Tolentino v. Friedman*, 46 F. 3d 645, 651-652 (7th Cir. 1995). The Seventh Circuit, in similar fashion, explained that the public as a whole has an interest in the vindication of statutory rights, and Congress' specific intent under the FDCPA was to facilitate an individual plaintiff's ability to pursue an action where the economic burden of costs and fees would otherwise preclude enforcement. *Tolentino*, 46 F. 3d at 652. Quoting the Supreme Court, the Seventh Circuit additionally made clear: "Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms." *Id*. By virtue of Plaintiff's successful action to enforce liability under the FDCPA, Plaintiff and his counsel are entitled to an award of reasonable attorneys' fees and costs. *See* 15 U.S.C. §1692k(a).

V. **PUBLIC POLICY SUPPORTS AN AWARD OF ATTORNEYS' FEES AND COSTS TO PLAINTIFF.**

In enacting the FDCPA, Congress announced: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692 *et seq.* The purposes of the FDCPA, as stated by Congress, are "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id*. The fee shifting provision included in the FDCPA enables consumers to vindicate their personal rights while benefitting society in general,

5

resulting in greater deterrence of fraudulent and deceptive business practices. *See Russell v. Equifax A.R.S.*, 74 F. 3d 30, 33 (2d Cir. 1996).

Difficulty in enforcing statutes like the FDCPA, and its state law counterparts, by private attorneys general arises in part because, unlike personal injury actions, at the commencement of litigation the potential for recovery is not clear. *Bowers v. Transamerica Title Insurance Company*, 675 P. 2d 193, 204 (Wash. 1983). Further, the amount in controversy is usually too small to induce an attorney to commence litigation on a percentage contingency. *Id*. Additionally, litigation costs are an expense of doing business for corporations, whereas the average consumer doesn't have the economic staying power to engage in protracted litigation, thereby providing larger companies a unique advantage over consumers. *Chrysler Corp. v. Maiocco*, 209 Conn. 579, 595 (Conn. 1989).

Accordingly, "the purpose of the statutory fee award is to benefit the plaintiff by allowing the plaintiff to obtain counsel in order to pursue redress for relatively small claims." *Majcher v. Laurel Motors, Inc*., 287 Ill. App. 3d 719, 732 (Ill. Ct. App. 1997); *see also Grove v. Huffman*, 262 Ill. App.3d 531, 539 (Ill. Ct. Ap. 1994) ("To hold otherwise would discourage injured parties from seeking relief . . . and would be counterproductive to the [congressional] purpose . . ."). By providing the private bar with incentive to involve itself in consumer litigation through fee-shifting, the government is relieved of the costs of protecting consumers while insuring that consumers may still avail themselves of their statutory rights.

Absent a sufficient award of attorneys' fees and costs, an entry of judgment for the consumer would not make the consumer whole, as the average consumer would be unable to pay her attorneys' fees, creating a deterrent for private attorneys to pursue this type of action.  Fee-

shifting provisions are put in place to remove the difficulty of obtaining counsel in pursuing claims which are relatively small compared to potential legal costs. *Id.* at 539.

## VI. AN AWARD OF ATTORNEYS' FEES AND COSTS UNDER THE FDCPA IS TO BE BASED UPON ACTUAL TIME EXPENDED, AND NOT THE AMOUNT OF RECOVERY.

Enforcement of a plaintiff's rights under the FDCPA through the courts is prohibitively expensive. Awarding fees based upon actual time expended, rather than amount of recovery, makes economically feasible the pursuit of remedies by consumers in state and federal courts.[1] In referencing another fee-shifting statute, the Supreme Court approves the lodestar approach stating: "[t]"he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983).

---

[1] Analogous federal consumer protection statutes have likewise been interpreted in such manner. *See* S.Rep. 93-151 at 24 (stating "[i]t should be noted that an attorneys' fee is to be based on actual time expended rather than being tied to any percentage of the recovery"). Courts analyzing the fee shifting provision included in the federal Magnuson-Moss Warranty Act have noted: "In consumer protection as this, the monetary value of the case is typically low. If courts focus only on the dollar value and the result of the case when awarding attorney fees, the remedial purposes of the statutes in question will be thwarted. Simply put, if attorney fee awards in these cases do not provide a reasonable return, it will be economically impossible for attorneys to represent their clients. Thus, practically speaking, the door to the courtroom will be closed to all but those with either potentially substantial damages, or those with sufficient economic resources to afford the litigation expenses involved. Such a situation would indeed be ironic: it is but precisely those with ordinary consumer complaints and those who cannot afford their attorney fees for whom these remedial acts are intended."*Jordan v Transnational Motors, Inc.*, 537 N.W.2d 471 (Mich. 1995); *Rice v Mike Ferrell Ford, Inc.*, 403 S.E. 2d 73 (W. Va. 1987); *see also Bobby Jones v. Fleetwood Motor Homes*, 127 F. Supp.2d 958, 967 (N.D. Ill. 2000) (declining to reduce the consumer's award of attorneys' fees simply because the consumer recovered only $5,000 on a $92,000 motor home or only five (5) percent of the amounts sought: "As previously indicated, the statute provides that fee awards are to be based on time actually expended and legislative history supports that the fee award is not to be tied to a percentage of the recovery. Therefore, as long as the time expended was reasonable, it would be inappropriate to reduce the fee award because it might be considered disproportionate to the $5,000.00 in damages that that plaintiff actually recovered. No reduction will be made solely based on the amount of damages plaintiff obtained.").

"[R]easonable attorney's fees . . . are not conditioned upon and need not be proportionate to an award of money damages." *City of Riverside v. Rivera,* 477 U.S. 561, 576, (1986); *see also Lewis v. Kendrick,* 944 F. 2d 949, 957 (1st Cir.1991) ("[T]he fee is not limited by the size of the recovery, but may, in appropriate instances, greatly exceed it."). In fact, "[t]he disparity between the final award of damages and the attorneys' fees and expenses sought in [an FDCPA] case is not unusual and is necessary to enable individuals wronged by debt collectors to obtain competent counsel to prosecute claims." *Turner v. Oxford Management Services, Inc.*, 552 F. Supp. 2d 648, 656 (S.D. Tex. 2008); *see also Jones v. White*, 2007 WL 2427976, *6 (S.D. Tex. Aug. 22, 2007) (awarding over $270,000 in fees and costs under fee-shifting ADA statute, where injunctive relief and only $100 in statutory damages was awarded); *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983); *City of Riverside v. Rivera,* 477 U.S. 561, 576, (1986) ("[R]easonable attorney's fees ... are not conditioned upon and need not be proportionate to an award of money damages.").

## VII. A REASONABLE FEE IS JUDGED AGAINST THE PREVAILING MARKET RATE FOR ATTORNEYS OF COMPARABLE EXPERIENCE EMPLOYED IN CASES OF SIMILAR COMPLEXITY.

Concerning the lodestar calculation, the hourly rate for each advocate is to be based on the prevailing rate in the community for that individual's level of legal skill and experience. *Blum v. Stenson*, 465 U.S. 886 (1984). The Seventh Circuit observed, with explicit reference to the FDCPA:

> In order to encourage able counsel to undertake FDCPA cases, as congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. As we noted in *Gusman v. Unisys Corp.,* 986 F.2d 1146, 1150 (7th Cir.1993), "Our recent cases have stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients. For a busy attorney, this is the standard hourly rate. If he were not representing this plaintiff in this case, the lawyer could sell the same time to someone else.

8

> That other person's willingness to pay establishes the market's valuation of the attorney's services."

*Tolentino*, 46 F. 3d at 652.

The Third Circuit similarly stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group v. AT & T Bell Laboratories,* 842 F. 2d 1436, 1449 (3d Cir.1988).

## VIII. THE RATES SOUGHT BY PLAINTIFF'S ATTORNEYS ARE REASONABLE AND COMMENSURATE WITH THEIR EXPERIENCE IN THE FIELD OF CONSUMER PROTECTION.

A reasonable fee is judged against the prevailing market rate for attorneys of comparable experience employed in cases of similar complexity. Plaintiff seeks an award of attorney's fees in the amount of $3,619.50, for a total of 16.5[2] hours of attorney, paralegal, administrative staff, and law clerk time ranging from $95.00 per hour to $335.00 per hour. (See Statement of Services, attached hereto as Exhibit "D").

---

[2] Plaintiff's Counsel actually expended no fewer than 19.8 hours of attorney, paralegal, administrative staff, and law clerk time in this matter. (See Exhibit "D"). Plaintiff's Counsel has "ma[de] a good faith effort to exclude from [her] fee request hours that are excessive, redundant, or otherwise unnecessary," and therefore seeks to be compensated for only 16.5 hours. *Rodriguez v. Fla. First Fin. Grp., Inc.*, 2009 WL 535980, at *7 (M.D. Fla. 2009) (quoting *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983)). Noteworthy, Plaintiff seeks only 0.4 hours in connection with the preparation and filing of the instant motion and attachments, although time spent by attorneys representing an FDCPA plaintiff in preparing a fee petition is compensable. (See Exhibit "D;" see *infra*, § VIII(D)).

Specifically, Plaintiff seeks to recover attorney's fees for:

| Staff member | Title | Total time expended | Time sought | Hourly Rate | Total dollar amount |
|---|---|---|---|---|---|
| Alex Weisberg | Managing Partner | 6.10 | 6.10 | $335 | $2,043.50 |
| Aaron Radbil | Partner | 0.30 | 0.00 | $335 | $0.00 |
| Craig Ehrlich | Partner | 0.40 | 0.00 | $335 | $0.00 |
| Matthew Sullivan | Associate | 3.30 | 2.00 | $225 | $450.00 |
| Jose Gill | Associate | 0.10 | 0.00 | $175 | $0.00 |
| Venus Booth | Associate | 0.90 | 0.90 | $175 | $157.50 |
| Jennifer Christopher | Associate | 0.60 | 0.50 | $175 | $87.50 |
| Law Clerks | Law clerk | 1.10 | 1.10 | $135 | $148.50 |
| Jeanette Soto | Paralegal | 1.40 | 1.40 | $135 | $189.00 |
| Natasha Stewart | Legal Assistant | 0.70 | 0.70 | $95 | $66.50 |
| Gloria Ramirez | Paralegal | 0.10 | 0.00 | $135 | $0.00 |
| Annette Pepin | Legal Assistant | 0.70 | 0.70 | $95 | $66.50 |
| Lydia Bultemeyer | Paralegal | 0.80 | 0.10 | $135 | $13.50 |
| Tara St. Angelo | Paralegal | 1.80 | 1.50 | $135 | $202.50 |
| Crystal McCrae | Legal Assistant | 0.20 | 0.20 | $95 | $19.00 |
| Melissa Norton | Paralegal | 1.30 | 1.30 | $135 | $175.50 |
| TOTALS | | 19.80 | 16.5 | | $3,619.50 |

The hourly rates of Plaintiff's attorneys noted in Plaintiff's Statement of Services are commensurate with the experience and training of each employee at Weisberg & Meyers, LLC. These rates are also supported by the 2007 Consumer Law Attorney Fee Survey, the U.S. Attorney's "Laffey Matrix," as well as the affidavits of other consumer advocates. Numerous recent cases inside and outside of this District have also approved rates of at least $300.00 per hour for experienced attorneys who were experts in the field of consumer protection law. *See,*

10

*e.g., Dowling v. Litton Loan Servicing, LP*, 320 Fed. Appx. 442 (6th Cir. 2009) ($300 hourly rate fell within range of reasonableness for litigators of counsel's skill level and experience in that community); *Zachloul v. Fair Debt Collections & Outsourcing*, 2010 WL 1730789, at *5 (M.D. Fla. 2010) ($300.00 hourly rate appropriate for experienced counsel in FDCPA matter); *Stone v. Nat'l Enter. Sys.*, 2009 WL 3336073, at *5 (M.D. Fla. 2009) ($394.00 hourly rate deemed appropriate for experienced counsel in FDCPA matter); *Rodriguez v. Fla. First Fin. Grp., Inc.*, 2009 WL 535980, at *8 (M.D. Fla. 2009) ($350.00 hourly rate appropriate for experienced counsel in FDCPA matter) ; *Larsen v. JBC Legal Group, P.C.* 588 F. Supp 2d 360 (E.D. N.Y. 2008), as amended, (Dec. 18, 2008) (hourly rate of $300 was reasonable where attorney had practiced law for 17 years, focused on consumer law for 7 years, and had significant experience in consumer protection litigation); *Young v. Diversified Consultants, Inc.*, 554 F. Supp. 2d 954 (D. Minn. 2008) ($300 per hour for one attorney and $325 per hour for a more experienced attorney were reasonable where both were experts in FDCPA litigation); *Cope v. Duggins*, 203 F. Supp. 2d 650 (E.D. La. 2002).

The United States Court of Appeals for the Eleventh Circuit recently considered the rates of attorneys practicing in Florida in the field of consumer law, and held that "[t]here is no indication that the magistrate judge's independent judgment that $300.00 was a reasonable hourly rate was clearly erroneous. The fee was within the range described by the experts and commensurate with fee awards in similar cases." *Hepsen v. J.C. Christensen and Assoc., Inc.,* No. 10-12231 (11th Cir. 2010). In fact, according to the Seventh Circuit, paying counsel in a case arising under a federal consumer protection statute at rates *lower* than those that they could obtain in the marketplace is *inconsistent* with the congressional desire to enforce such legislation through private actions. *Tolentino v. Friedman*, 46 F. 3d 645 (7th Cir. 1995).

In *Sparks v. H&P Capital, Inc.*, No. 11-62145-CIV (S.D. Fla. 2012), the United States District Court for the Southern District of Florida recently deemed the rates sought for work performed by Weisberg & Meyers, LLC's professionals to be reasonable. (*See* Report and Order adopting Report, attached hereto as Exhibit "E"). Specifically, the court found that the $335.00 per hour sought by attorneys Alex Weisberg and Aaron Radbil, and the $135.00 per hour sought by Weisberg & Meyers, LLC's paralegals, are "within the range of prevailing market rates charged in this District for similar services by lawyers and paralegals of reasonably comparable skills, experience and reputation." (*See* Exhibit "E," p. 5 of Report).

As far back as June, 2008, Florida's Eleventh Judicial Circuit, in and for Miami-Dade County, deemed a $300.00 hourly rate reasonable for the consumer representation services of Alex D. Weisberg, a founding partner of Weisberg & Meyers, LLC, and one of the attorneys most directly involved in the representation of Plaintiff here. (See Attorney Fee & Cost Judgment in *Sanchez v. General Motors Corp.*, Case No. 2006-28287-CA-22 (Fla. 11th Jud. Circ. 2008), a true and correct copy of which is attached hereto as Exhibit "F").

Texas courts have also specifically found Plaintiff's attorneys rates to be reasonable. The Northern District of Texas, in *Molinar v. Coleman*, considered the very same attorneys' rates, and held:

> The Court finds that both this hourly rate and the amount of time spent on this case are reasonable, and should therefore be recovered from the Defendant.

(See Order in *Molinar v. Coleman*, 2009 WL 435374 (N.D. Tex. 2009), a true and correct copy of which is attached hereto as Exhibit "G").

The Northern District of Texas also considered Plaintiff's attorneys' rates in *Brown v. Phoenix Recovery Group*, and held:

12

> Given their respective levels of experience, and the rates prevalent in the area in which Brown filed her suit, the fees charged by the three attorneys and two paralegals are not unreasonable. Such an award is also commensurate with the length and complexity of this case.

(See Order in *Brown v. Phoenix Recovery Group*, No. 3:09-CV-1319-D, a true and correct copy of which is attached hereto as Exhibit "H").

In addition, the Southern District of Texas considered Plaintiff's attorneys' rates in *Van Alstyne v. GC Services, LP*, noting that Plaintiff's attorneys' work was "performed with a high level of skill" and finding the fees reasonable. (See Order in *Van Alstyne v. GC Services, LP*, No. H-08-3175, a true and correct copy of which is attached hereto as Exhibit "I").

Additionally, an Arizona District Court has found similar attorneys' rates to be reasonable. In *Savage v. NIC, Inc.*, the court considered the rates of attorneys practicing in the field of consumer law, and held "Plaintiff's request for $17,442.30 (61.5 hours at a rate of approximately $272 per hour and $675.20 for court costs) to be reasonable." (*See Savage v. NIC, Inc.*, 2010 WL 2347028 (D. Ariz. 2010), attached hereto as Exhibit "J").

### A. The Experience Of The Attorneys At Weisberg & Meyers Provides Support For The Hourly Rates Requested.

Plaintiff's attorneys' experience is summarized in the firm profile, attached hereto as Exhibit "K", and further supported by the affidavits and declarations of Weisberg & Meyers professionals contained within Composite Exhibit "L", also attached hereto.

### B. The Rates Sought By Weisberg & Meyers Are Reasonable Compared With The 2011 Consumer Law Attorney Fee Survey Of Prevailing Market Rates.

In 2011, a survey was conducted of consumer advocates across the country to determine the rates charged by attorneys practicing in the area of consumer protection, grouped by "attorney's years in practice, location of practice, and size of firm." (See 2011 Consumer Law

Attorney Fee Survey, attached hereto as Exhibit "M").  Page 12 of the attached survey shows that the average billing rate in 2007 for firms with fewer than five (5) attorneys in Florida was $312.00 per hour.  (See Exhibit "M").

### C. The Rates Sought By Weisberg & Meyers Are Reasonable Compared With The United States Attorney's Office's "Laffey Matrix."

The attorneys' fee rates requested by Plaintiff through Plaintiff's attorneys' Statement of Services are commensurate with the prevailing rates for attorneys that practice federal law.  This case was filed pursuant to, *inter alia*, a federal remedial statute, the FDCPA, so it is fitting to compare rates charged by other attorneys practicing federal law to determine an appropriate rate.  *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 371 (D. D.C. 1983) (comparing rates of private sector attorneys against the backdrop of claims filed pursuant to federal statutes with fee-shifting provisions).

The United States Attorney's Office, Civil Division, took the *Laffey* court's analysis one step further, creating the "Laffey Matrix" to reflect how inflation has changed billing rates over the years.  The "Laffey Matrix" clearly demonstrates that the rates sought by Plaintiff's attorneys herein are reasonable compared to recognized rates for attorneys' with similar experience.  The current "Laffey Matrix"[3] is incorporated into this Motion for Attorneys' Fees and Costs in its entirety, along with the United States Attorney's Office, Civil Division's explanatory notes thereto:

---

[3] United States Department of Justice, United States Attorney's Office, District of Columbia, Civil Division, "Laffey Matrix,"
http://www.justice.gov/usao/dc/divisions/civil_Laffey_Matrix_2003-2012.pdf

**LAFFEY MATRIX -- 2003-2012 (2009-10 rates were unchanged from 2008-09 rates)**

Years (Rate for June 1 - May 31, based on prior year's CPI-U)

| Experience | 03-04 | 04-05 | 05-06 | 06-07 | 07-08 | 08-09 | 09-10 | 10-11 | 11-12 |
|---|---|---|---|---|---|---|---|---|---|
| 20+ years | 380 | 390 | 405 | 425 | 440 | 465 | 465 | 475 | 495 |
| 11-19 years | 335 | 345 | 360 | 375 | 390 | 410 | 410 | 420 | 435 |
| 8-10 years | 270 | 280 | 290 | 305 | 315 | 330 | 330 | 335 | 350 |
| 4-7 years | 220 | 225 | 235 | 245 | 255 | 270 | 270 | 275 | 285 |
| 1-3 years | 180 | 185 | 195 | 205 | 215 | 225 | 225 | 230 | 240 |
| Paralegals & Law Clerks | 105 | 110 | 115 | 120 | 125 | 130 | 130 | 135 | 140 |

*Explanatory Notes:*

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia. The matrix is intended to be used in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412 (b) (Equal Access to Justice Act). The matrix does **not** apply in cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

2. This matrix is based on the hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985). It is commonly referred to by attorneys and federal judges in the District of Columbia as the "*Laffey* Matrix" or the "United States Attorney's Office Matrix." The column headed "Experience" refers to the years following the attorney's graduation from law school. The various "brackets" are intended to correspond to "junior associates" (1-3 years after law school graduation), "senior associates" (4-7 years), "experienced federal court litigators" (8-10 and 11-19 years), and "very experienced federal court litigators" (20 years or more). *See Laffey*, 572 F. Supp. at 371.

3. The hourly rates approved by the District Court in *Laffey* were for work done principally in 1981-82. The Matrix begins with those rates. *See Laffey*, 572 F. Supp. at 371 (attorney rates) & 386 n.74 (paralegal and law clerk rate). The rates for subsequent yearly periods were determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5 (up if within $3 of the next multiple of $5). The result is subject to adjustment if appropriate to ensure that the relationship between the highest rate and the lower rates remains reasonably constant. Changes in the cost of living are measured by the Consumer Price Index for All Urban Consumers (CPI-U) for Washington- Baltimore, DC-MD-VA-WV, as announced by the Bureau of Labor Statistics for May of each year.

4. Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the United States Attorney's Office as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n. 14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Lower federal courts in the District of Columbia have used this updated *Laffey* Matrix when determining whether fee awards under fee-shifting statutes are reasonable. *See, e.g.*, *Blackman v. District of Columbia*, 59 F. Supp. 2d 37, 43 (D.D.C. 1999); *Jefferson*

15

*v. Milvets System Technology, Inc.*, 986 F. Supp. 6, 11 (D.D.C. 1997); *Ralph Hoar & Associates v. Nat'l Highway Transportation Safety Admin.*, 985 F. Supp. 1, 9-10 n.3 (D.D.C. 1997); *Martini v. Fed. Nat'l Mtg Ass'n*, 977 F. Supp. 482, 485 n.2 (D.D.C. 1997); *Park v. Howard University*, 881 F. Supp. 653, 654 (D.D.C. 1995) (emphasis in original).

Based on the reasonable market rates in the "Laffey Matrix," the complexity and intensity of these proceedings, and the issues involved, the attached affidavits and attorney profiles, and other authority provided to this Court in Plaintiff's Motion for Attorney's Fees and Costs, the hourly rates sought by Plaintiff's attorneys are reasonable, and should be awarded in full.

### D. Time Spent Preparing And Litigating The Attorneys' Fee Petition Is Recoverable.

In cases brought under fee-shifting statutes, where the prevailing party is forced to incur time and effort litigating its petition for attorneys' fees, such time is recoverable. District courts may award attorneys' fees and costs for time spent litigating the issue of attorneys' fees. *See e.g., La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 336 (5th Cir. 1995); *Hairston v. R&R Apartments*, 510 F.2d 1090, 1093 (7th Cir. 1975) ("…if no fees are awarded, the burden of the costs is placed on the organization providing the services, and it correspondingly may decline to bring such suits and decide to concentrate its limited resources elsewhere, thereby curtailing the forceful application of the Act that Congress sought"); *Brandenburger v. Thompson*, 494 F.2d 885 (9th Cir. 1974); *Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534 (5th Cir. 1970).

As the Third Circuit has stated:

> If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours will be correspondingly decreased. Recognizing this fact, attorneys may become wary about taking . . . cases for which attorneys' fees are statutorily authorized. Such a result would not comport with the purpose behind most statutory fee authorizations, viz., the encouragement of attorneys to represent indigent clients and to act as private attorneys general in vindicating congressional policies.

*Prandini v. National Tea Co.*, 585 F.2d 47, 53 (3d Cir. 1978); *see also Burchett v. Bower*, 470 F. Supp. 1170, 1173 (D. Ariz. 1979) ("[T]ime spent in preparing and litigating the fees petition should be compensated accordingly.").

## IX. PLAINTIFF REQUESTS REIMBURSEMENT FOR COSTS EXPENDED.

Pursuant to the stipulation of the parties regarding her entitlement thereto, and further pursuant to 28 U.S.C. §1920, and Fed. R. Civ. P. 54(d), Plaintiff seeks $370.00 in recoverable litigation costs incurred in relation to this matter. (*See* Plaintiff's Statement of Costs, attached hereto as Appendix 1).[4] The $370.00 sought by Plaintiff represents filing fees of $350.00 and process server fees of $20.00.

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order awarding Plaintiff, and her Counsel, attorneys' fees in the amount of $3,619.50, and costs in the amount of $370.00.

          Respectfully submitted,
          **JEAN BRIGHT**

          By: s/ Alex D. Weisberg
          ALEX D. WEISBERG
          FBN: 0566551
          WEISBERG & MEYERS, LLC
          ATTORNEYS FOR PLAINTIFF
          5722 S. Flamingo Road, Ste. 656
          Cooper City, FL 33330
          (954) 212-2184
          (866) 577-0963 fax
          aweisberg@attorneysforconsumers.com

---

[4] Plaintiff anticipates that the Statement of Costs will be prepared and filed on or before February 27, 2013. Plaintiff's Counsel are on trial in the Southern District of Florida in the matter of Brown, Anita & Scott v. Shendell & Associates, et al., Case No. 9:11-CV-81133-RYSKAMP/HOPKINS, on February 25, 2013, and February 26, 2013.

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on February 25, 2013, a true and correct copy of the foregoing was filed with the United States District Court for the Middle District of Florida using CM/ECF, which will serve notice of such filing on the following:  Mr. Dale Golden at dgolden@goldenscaz.com..

                                        s/ Alex D. Weisberg
                                        Alex D. Weisberg